UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONATO TORRES-MACIEL,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE NORTHWEST ICE PROCESSING CENTER,<br><br>Respondent. | CASE NO. 2:26-cv-03883-JNW<br><br>ORDER ON HABEAS PETITION |

Petitioner Donato Torres-Maciel's habeas petition comes before the Court. Dkt. No. 1. Torres-Maciel is a citizen of Mexico who was arrested by Immigration and Customs Enforcement ("ICE") and is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. The Court GRANTS the petition for the reasons below.

## 1. BACKGROUND

Torres-Maciel entered the United States in May 2020 on a work visa, which later expired. Dkt. No. 11 ¶ 5. He asserts that in the four years leading up to his arrest, he maintained continuous employment with an event-rental company. Dkt. No. 1 at 11. He explains, "[t]hat continuous employment provided structure and

stability to my daily life and allowed me to support myself and assist my family." *Id.* He says: "My life outside of work was similarly stable. My routine was centered primarily on work, and home, and during my available free time I enjoyed playing volleyball. Over the years, I developed friendships and relationships with people who came to know me personally and through my employment." *Id.*

On September 24, 2026, ICE assigned Deportation Officer ("DO") L. Miller to inspect commercial vehicle drivers at a weigh station off I-90 in Post Falls, Idaho. Dkt. No. 12-1 at 3. That morning, he inspected a vehicle in which Torres-Maciel was a passenger. *Id.* After DO Miller determined that the driver lacked certain requisite paperwork for operating the vehicle, three more DOs came to assist him. *Id.* Do Miller took the passengers' IDs, and the officers ran "[s]ystem checks," which showed that Torres-Maciel was unlawfully present in the United States. *Id.* at 3–4. The DOs arrested him and served him with a notice to appear, charging him with remaining in the United States past the expiration of his authorized period. Dkt. No. 11 ¶ 8. At the same time, one of the DOs also served him with a notice of custody determination—a checkbox form with no reasoning or findings that states, "I have determined that, pending a final administrative determination in your case, you will be . . . [d]etained by the Department of Homeland Security." Dkt. No. 12-2 at 2. Torres-Maciel noted on the form that he was requesting review of that custody determination. *Id.* He was then transferred to NWIPC, where he remains detained. Dkt. No. 11 ¶¶ 9–10.

On October 7, 2026, Torres-Maciel appeared for a master calendar hearing at the Tacoma Immigration Court. *Id.* ¶ 11. According to the Government, he

requested pre-conclusion voluntary departure, which the Immigration Judge ("IJ") granted, ordering him to depart by November 6, 2026. *Id*. Despite being granted voluntary departure, the Government kept Torres-Maciel detained. The IJ's decision sets a voluntary departure bond of $0.00 and states that Torres-Maciel's "[f]ailure to post the bond as required or to depart by the required date will result in an alternate order of removal to Mexico taking effect immediately." Dkt. No. 12-4 at 3.

On October 20, the Government notified the Court and Torres-Maciel that it intends to remove him in November. Dkt. Nos. 8; 8-1. The notification letter also states that ICE refused to conduct a custody review "pursuant to 8 C.F.R. § 241.4(g)(4)," meaning ICE would not consider releasing Torres-Maciel because it believed he was subject to a final order of removal that it could execute soon. Dkt. No. 8-1 at 1; *see* 8 C.F.R. § 241.4(g)(4) (regulation applying to "[c]ontinued detention of inadmissible . . . [noncitizens] beyond the [statutory] removal period"). However, the Government concedes that there is no final order of removal against Torres-Maciel, due to the relief he was granted—voluntary departure. Dkt. No. 10 at 5.

On October 22, the IJ considered Torres-Maciel's request for review of his custody determination but found he lacked jurisdiction to authorize discretionary release because Torres-Maciel has a "Final Order of Voluntary Departure." Dkt. No. 12-5. at 2.

## 2. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 3. DISCUSSION

The IJ's custody order and ICE's notice of removal both treat Torres-Maciel as subject to a final order of removal. Dkt. Nos. 8-1 at 1; 12-5 at 2. But the Government asserts that it lawfully detains Torres-Maciel under 8 U.S.C. § 1226(a), which authorizes discretionary detention of noncitizens pending removal proceedings. Dkt. No. 10 (Government's return) at 2 ("Federal Respondents maintain that detention remains authorized by 8 U.S.C. § 1226(a) because no administratively final order of removal has taken effect."). The Court agrees. An alternate order of removal becomes final only "upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days," 8 C.F.R. § 1241.1(f), and the Government concedes that

neither has happened, Dkt. No. 10 at 3, 5. Until a removal order becomes final, detention authority does not shift to Section 1231(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

To detain a person under Section 1226(a), ICE must exercise its discretion consistent with the statute and its implementing regulations by making an individualized custody determination. *See Rodriguez Rodriguez v. Knight*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) (granting habeas petition and release when no evidence showed the Government exercised any discretion when it detained petitioner). In making the determination, ICE considers whether the noncitizen is a danger to the community or a flight risk such that detention is warranted. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1219 (9th Cir. 2022). Then, "[i]f ICE denies bond, the alien can seek an individualized bond hearing before an immigration judge," who, "[i]n making the bond determination" will "consider nine factors that inquire into the individual circumstances of the alien." *Id.* (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). As numerous courts have held, the failure to make an individualized bond determination is "in itself a violation of petitioner's due process rights." *Lopez Esteban v. Warden-Facility Admin. of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (citation modified) (collecting cases).

Torres-Maciel argues that his detention without individualized justification violates due process. Dkt. No. 1 at 13–15. The record shows that the agency never made the individualized custody determination Section 1226(a) requires. Instead, ICE treated Torres-Maciel as though he has a final order of removal (even though

he does not) and refused to review his custody on that basis. And while the Government claims that Torres-Maciel "received a custody determination by the Immigration Judge on October 22, 2026," Dkt. No. 10 at 6, the IJ actually declined to make a bond determination under Section 1226(a), finding he lacked jurisdiction to do so. The record does not provide basis for the IJ's finding, nor does the Government explain it. Regardless of the reason, the record shows that the IJ did not make findings under Section 1226(a). Accordingly, on this record, the Government has not exercised its discretion to make a bond determination as to Torres-Maciel under Section 1226(a). *See Rodriguez Rodriguez*, 2026 WL 2641448, at *2 ("The record before the Court does not reflect any such exercise of discretion."). And that failure is in itself a violation of Torres-Maciel's due process rights. *Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases). Thus, Torres-Maciel has shown that his detention violates due process.

The Court rejects the Governments' arguments to the contrary. The Government's return focuses primarily on Torres-Maciel's grant of voluntary departure. "Voluntary departure is a discretionary form of relief that allows certain favored [noncitizens]—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly" within a given timeframe, rather than being removed. *Meza-Vallejos v. Holder*, 669 F.3d 920, 924 (9th Cir. 2012) (quoting *Dada v. Mukasey*, 554 U.S. 1,8 (2008)); *see also Zazueta-Carillo v. Ashcroft*, 322 F.3d 1166, 1168 (9th Cir. 2003). The Ninth Circuit has explained the significance of an award of voluntary departure: "First, it allows the [noncitizen] to avoid the stigma of compulsory ejection. Second, it permits the [noncitizen] to select

his or her own destination. But, most importantly, the grant of voluntary departure facilitates the possibility of return to the United States." *Contreras-Aragon v. I.N.S.*, 852 F.2d 1088, 1090 (9th Cir. 1988).

The Government states that during the open period of voluntary departure, the applicable regulations "allow the Immigration Judge to impose conditions necessary to ensure timely departure, including the posting of a voluntary departure bond." Dkt. No. 10 at 3 (citing 8 C.F.R. § 1240.26(b)(3)). The Government asserts that under voluntary departure regulations, a "Field Office Director may hold the noncitizen in custody until any required bond is posted." *Id.*; *see* 8 C.F.R. § 1240.26(b)(3). But that custody provision governs voluntary departure granted at the conclusion of removal proceedings, not the pre-conclusion departure granted here. And in any event, the bond amount here was $0.00. Dkt. No. 12-4 at 3. Accordingly, the Government's reasoning doesn't apply to these facts and is not a basis for Torres-Maciel's continued detention.

The Government's return also claims that Torres-Maciel's detention "is limited to the purpose of ensuring compliance with the grant of voluntary departure before the alternate order of removal becomes effective." Dkt. No. 10 at 6–7. But that statement is not supported by the record. Indeed, based on the record before the Court, no agency official has found that Torres-Maciel should be detained to facilitate his voluntary departure, or that his detention "is limited to the purpose of ensuring compliance with the grant of voluntary departure." *Id.* From a practical standpoint, detention would seem to impede one's ability to voluntarily leave the country. And the Government has not attempted to explain what it is doing to

facilitate Torres-Maciel's grant of voluntary departure before the November 6 deadline while he is in custody. Based on the Government's notice of imminent removal, it appears the Government believes it can keep Torres-Maciel's detained until his voluntary departure deadline expires, then immediately enforce the resulting, alternate removal order, effectively depriving him of the benefit of voluntary departure.[1]

The Government cites two cases from this District, but neither one is helpful to its cause. First, it cites this Court's prior decision in *Saaryan v. ICE Field Off. Dir.*, No. 2:26-cv-1412-JNW, 2026 WL 2110664 (W.D. Wash. Jul. 22, 2026). But the petitioner there was mandatorily detained under Section 1231(a)(6) after his voluntary departure window closed and his removal order became final, making this Court's ruling inapplicable here. Second, the Government cites *Castellano Penaloza v. U.S. Immgr. and Customs Enf't Field Off. Dir.*, No. 2:25-cv-02629-DGE, 2026 WL 195045 (W.D. Wash. Jan. 26, 2026). There, the petitioner had been granted voluntary departure specifically to Venezuela "under safeguards" and remained in ICE custody before his departure. *Id.* at *2. The court denied the petition because it was devoid of "facts describing Petitioner's individual circumstances or why such circumstances support habeas relief." *Id.* This case is distinct because, for the

---

[1] If this is indeed the Government's plan, it is a dubious one because under BIA precedent, "whe[n] a person fails to voluntarily depart through no fault of her own, it cannot be said they have 'voluntarily' failed to depart within the period of voluntary departure." *Castellano Penaloza v. U.S. Immgr. and Customs Enf't Field Off. Dir.*, 2:25-cv-02629-DGE, 2026 WL 195045, at *2 n.2 (W.D. Wash. Jan. 26, 2026) (citation modified) (quoting *In re Zmijewska*, 24 I. & N. Dec. 87, 94 (B.I.A. 2007)).

reasons explained above, the record supports Torres-Maciel's claim that his detention violates due process.

Finally, the Government argues that Torres-Maciel must exhaust his administrative remedies by appealing the IJ's denial of bond for lack of jurisdiction. Exhaustion here is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Even assuming the *Puga* factors favor exhaustion, a court may waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (citation modified). The Court finds that the administrative remedies here are not efficacious in these circumstances and that irreparable injury in the form of unlawful detention will result if the Court requires administrative exhaustion. Accordingly, the Court waives prudential exhaustion here.

As for the remedy, Torres-Maciel requests immediate release and, in the alternative, a bond hearing under Section 1226(a). The Court finds immediate release appropriate because, as other courts have found, when a petitioner's detention is "unlawful from its inception" that "typically requires immediate release." *Lopez Esteban*, 2026 WL 2686824, at *6 (collecting cases); *Rodriguez Rodriguez*, 2026 WL 2641448, at *3 ("Because ICE detained Petitioner without an individualized determination, . . . detention has been unlawful from the outset . . . [and] [t]he most appropriate remedy for this violation is to return Petitioner to the previous status quo by releasing him from detention."). That is the case here—ICE

detained Torres-Maciel without an individualized custody determination from the start. Because the Court orders release, it does not reach Torres-Maciel's alternative request for a bond hearing or his third ground for relief.

## 4. CONCLUSION

Accordingly, the Court GRANTS the petition for writ of habeas corpus. The Government must release Petitioner from custody within TWENTY-FOUR (24) HOURS of this order under his previous conditions of release and must return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention. Respondents must file a status report within FORTY-EIGHT (48) HOURS of this order confirming their compliance.

**Petitioner should be aware that this order does not alter any voluntary departure deadline.**

Dated this 28th day of October, 2026.

Jamal N. Whitehead
United States District Judge